UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
IRA C. WILLIAMS, JR.,

                    Plaintiff,

                                                          **MEMORANDUM**
                                                          **AND ORDER**
          -against-

                                                          10 CV 0882 (ENV)

NEW YORK CITY TRANSIT
AUTHORITY and SALLY LIBRERA,

                    Defendants.
------------------------------------------------------X

On March 1, 2010, plaintiff Ira C. Williams, Jr. filed this action against the New York

City Transit Authority ("NYCTA") and Sally Librera¹ ("Librera"), alleging both age and race

discrimination as a result of the NYCTA's denial of his request for a promotion.  (Third Am.

Compl.² ¶ 5).  Plaintiff's initial Complaint asserted claims under Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, the

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the

New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law

_____

¹The Court notes that the proposed Third Amended Complaint refers to the individual
defendant as "Librera," but in other submissions, the name is sometimes spelled "Labrera" or
"Libera."

²Citations to "Third Am. Compl." refer to the proposed Third Amended Complaint, filed
on May 9, 2011.

("NYCHRL"). On August 18, 2010, plaintiff amended his Complaint to include claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et. seq. ("ADEA").

Currently before the Court is plaintiff's request for spoliation sanctions against defendants for their alleged spoliation of evidence during discovery and request for an Order compelling defendants to produce witness Tom Webb, a former Vice President at NYCTA, for an in-person deposition in New York. (Pl.'s 7/5/11 Letter at 1). Also before the Court is defendant's request for an extension of time to serve errata sheets and responses to outstanding documents and request for an Order requiring the plaintiff to prove a fully executed HIPAA release for medical records.

## BACKGROUND

During the course of discovery, plaintiff served a document request seeking, "among other things, plaintiff's personnel file." (Id.) By letter dated July 13, 2010, plaintiff was informed that "Mr. Williams' original personnel file ha[d] been 'misplaced' and that the Transit Authority ha[d] attempted to 'recreate it.'" (Id.) Among other items believed to be in plaintiff's personnel file are documents relating to plaintiff's intermittent assignment as acting Director of Maintenance-of-Way ("MOW") Training beginning in 2002. (Id. at 2). Plaintiff asserts that misplacement of his file and the loss of this documentation "is not an insignificant spoliation

2

issue" because defendant Librera testified at her deposition that she was unaware that plaintiff had ever served as acting Director of MOW Training as plaintiff alleges. (Id. at 1). Librera claims that she "never saw any memos or anything indicating . . . that Ira Williams was an acting director." (Id.) Librera further testified at her deposition that Tom Webb ("Webb"), a former Vice President of the NYCTA, "issued an oral directive that no employee is to be recognized as serving in an acting capacity." (Id. at 2). Plaintiff, however, alleges that he has provided the defendants with documentation that shows that "Mr. Williams had been placed in a 'delegation of authority,' i.e, an acting position," intermittently since 2002. (Id. at 1-2). According to plaintiff, although these documents pre-date the November 2009 assignment that is at issue in the instant action, plaintiff's personnel file most likely contained a "document indicating that plaintiff was serving in an acting capacity." (Id. at 2).

Plaintiff further alleges that the issuance of the Webb directive occurred in July of 2010, after the defendants filed their Answer,[3] in which they denied that plaintiff had been serving in an acting capacity. (Id.) Plaintiff therefore claims that he is entitled to an "inference that written documentation existed" in his personnel file that would have verified that he was filling the position of Director, MOW Training, in an acting capacity. (Id.)

Plaintiff alleges that defendants have failed to preserve another critical document.

---

[3] Defendant's Answer was filed on dated April 23, 2010.

3

Specifically, plaintiff points to the testimony of Ira Norman ("Norman"), former Director of the Workforce Development Group at NYCTA, who states that "during the interview in which plaintiff was selected for the position of Director, MOW Training, he [had] rated the candidates' interview responses with numerical values." (Id.) Plaintiff claims that he is entitled to discovery of this document, but that defendants have failed to produce it. (Id.) Norman allegedly testified that when he left the NYCTA, he left these documents there. However, defendants have indicated that they cannot be located. (Id.) Since Norman testified "that he selected plaintiff for the position," plaintiff alleges that Norman's numerical ratings "would have given an indication of how plaintiff fared during his interview." (Id.) Plaintiff therefore claims that, in light of the loss of these documents, he is entitled to an inference that he scored higher on Norman's scale than Martin Hoban, the candidate later selected for the position instead of plaintiff. (Id.)

In addition to seeking sanctions for defendant's spoliation of certain documents, plaintiff seeks an Order requiring defendant to pay the necessary travel expenses required in order for plaintiff to take Mr. Webb's deposition. Plaintiff claims that he has been attempting to depose Mr. Webb since June of 2010. (Id. at 3). Although defendants' prior counsel had represented that defendants "would produce [Webb] for a deposition at the appropriate time," it was not until June 7, 2011, after plaintiff issued a second notice to take Webb's deposition, that defendants informed plaintiff that Webb had retired and relocated to California. (Id.) Plaintiff is eager to

4

"preserve [Webb's] testimony" in light of Webb's urgent health concerns, and he requests that the deposition be conducted in person as opposed to by telephone or written questions. (Id.) According to plaintiff, defendants' counsel represented that "Mr. Webb may be in New York in September," and may be available to be deposed at that time. (Id.) However, plaintiff is concerned that defendants' response is "too tentative," and therefore requests that defendants be Ordered by this Court "to pay the necessary expenses for Mr. Webb to travel to New York to sit for the requested deposition." (Id.)

## DISCUSSION

### A. Spoliation Legal Standard

Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2); see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders"). It is clear that sanctions may therefore be imposed when a party spoliates evidence in violation of a court order. See, e.g., West v. Goodyear Tire & Rubber Co. 167 F.3d 776, 779 (2d Cir. 1999) (citing John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)). The courts in this

5

circuit have held that even where no explicit discovery order has been issued, the court has the inherent power to preserve the integrity of judicial proceedings by, among other things, imposing sanctions for spoliation. See id.; Kronisch v. United States, 150 F.3d 122, 126-27 (2d Cir. 1998); Sterbenz v. Attina, 205 F. Supp. 2d 65, 73-74 (E.D.N.Y. 2002); Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. 396, 399 (S.D.N.Y. 2001). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted). However, any such sanction "should be 'molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine,' which is predicated upon the rationale that by destroying evidence, one party has deprived the other of the ability to prosecute or defend an action." Sterbenz v. Attina, 205 F. Supp. 2d at 74 (citing West v. Goodyear Tire & Rubber Co., 167 F.3d at 779).

The Second Circuit has defined spoliation as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d at 779); see also Houlihan v. Marriot Int'l, Inc., No. 00 CV 7439, 2003 WL 22271206, at *1 (S.D.N.Y. Sept. 30, 2003). A party has an obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have

6

known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Federal Express

Corp., 247 F.3d at 436 (citing Kronisch v. United States, 150 F.3d at 126); Barsoum v. N.Y.C.

Hous. Auth., 202 F.R.D. at 400 (holding that a party is under an obligation to retain documents

and other evidence that it knows may be relevant to a pending or future litigation). "[A]nyone

who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence

that might be useful to an adversary." Zubulake v. UBS Warburg L.L.C. (Zubulake IV), 220

F.R.D. 212, 217 (S.D.N.Y. 2003) (emphasis added). This obligation to preserve relevant

evidence exists whether or not the documents have been specifically requested in a demand for

discovery or whether there has been an explicit discovery order issued. Kronisch v. United

States, 150 F.3d at 126-27; Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400.

A party seeking sanctions for the spoliation of evidence must establish that three elements

are present in order to be awarded such sanctions:

> (1) that the party having control over the evidence had an
> obligation to preserve it at the time it was destroyed; (2) that the
> records were destroyed 'with a culpable state of mind'; and (3) that
> the destroyed evidence was 'relevant' to the party's claim or
> defense such that a reasonable trier of fact could find that it would
> support that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); Farella v.

City of New York, No. 05 CV 5711, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007); see also

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-09; Fujitsu Ltd. v. Federal Express

Corp., 247 F.3d at 436; Zubulake IV, 220 F.R.D. at 220.

Therefore, in order to determine whether sanctions should be imposed upon the defendants in this case for the spoliation of the personnel file and Norman documents, the Court begins by considering whether the plaintiff has sufficiently established these three required elements. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107.

## B. Spoliation Analysis – Plaintiff's Personnel File

### 1. Prong One: Obligation and Control

The first element necessary to establish spoliation requires plaintiff to show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." Id. Courts in this circuit have found that "once a party reasonably anticipates litigation it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (quoting Treppel v. Biovail Corp., 249 F.R.D. 111, 118 (S.D.N.Y. 2008); Zubulake IV, 220 F.R.D. at 218). This obligation to preserve evidence "runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" Chan v. Triple 8 Palace, No. 03 CV 6048, 2005 WL

8

1925579, *6 (S.D.N.Y. Aug. 11, 2005) (quoting Turner v. Hudson Transit Lines, 142 F.R.D. 68,

73 (S.D.N.Y. 1991)); see also Vagenos v. LDG Fin. Servs., L.L.C., No. 09 CV 2672, 2009 WL

5219021, at *2 (E.D.N.Y. Dec. 31, 2009).

"Once a 'litigation hold' is in place, a party and its counsel must make certain that all

sources of potentially relevant information are identified and placed 'on hold,'" which will

"involve communicating with the 'key players' in the litigation. . . . Unless counsel interviews

each [player], it is impossible to determine whether all potential sources of information have

been inspected." Zubulake v. UBS Warburg L.L.C. (Zubulake V), 229 F.R.D. 422, 432

(S.D.N.Y. 2004) (emphasis added). "Key players" have been defined as "the people identified in

a party's initial disclosure and any subsequent supplementation thereto. Because these 'key

players' are '[those] likely to have relevant information,' it is particularly important that the

preservation duty be communicated clearly to them." Id. at 433-34.

Plaintiff claims that on February 25, 2010, the Equal Employment Opportunity

Commission ("EEOC") notified the defendants of plaintiff's charge of discrimination. (Pls.'

7/5/11 Letter at 2). The EEOC also informed defendants of their obligation to "preserve all

personnel records relevant to the charge or the action until final disposition of the charge or

action" under Section 1602.14 of the EEOC's regulations. (Id.) The EEOC notice also

apparently indicated that such "personnel records" included all "personnel or employment

9

records relating to the aggrieved person." (Id.) In addition to the EEOC notification of the obligation to preserve plaintiff's personnel file, plaintiff's counsel also sent a certified preservation letter, dated February 25, 2010, "notifying [defendants] that they had a duty to preserve electronically stored information (ESI)," in addition to all "'paper data' that may be relevant to this dispute." (Id.) Defendants were therefore clearly put on notice as early as February 2010 that they had a duty to preserve evidence related to plaintiff's case, and, in particular, plaintiff's personnel file.

Counsel should therefore have informed their client to preserve plaintiff's personnel file. See Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7 (noting that "the utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); see also Phoenix Four, Inc. v. Strategic Resources Corp., No. 05 CV 4837, 2006 WL 1409413, at *5-6 (S.D.N.Y. May 23, 2006) (underscoring counsel's affirmative duty to ensure that all sources of relevant information are discovered); Zubalake IV, 220 F.R.D. at 217 (holding that anyone who anticipates being a party to a lawsuit "'is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request'" (quoting Turner v. Hudson Transit Lines, 142 F.R.D. at 72)).

Even if counsel was not made aware of these two notifications or knew but did not

10

impose a litigation hold, defendants themselves are equally responsible for failing to maintain the files in a secure fashion. As the court in Vagenos v. LDG Financial Services, L.L.C. noted, the defendants decide who to retain as their counsel and thus they are also "responsible for [their] attorney's negligent conduct or bad advice in connection with the action." 2009 WL 5219021, at *2. Although counsel is required to inform his clients of their obligations, "[a]t some point, the client must bear responsibility for a failure to preserve." Zubulake V, 229 F.R.D. at 433. Here, defendants failed to preserve important, relevant evidence within their control, despite their clear obligation to do so, satisfying the first prong of the spoliation test.

In response, defendants argue that "[p]laintiff's request for sanctions is unnecessary, unwarranted and without any palpable merit." (Defs.' 7/8/11 Letter at 3). According to defendants, "[p]laintiff has failed to adduce sufficient evidence or any evidence that would warrant" spoliation sanctions. (Id. at 2-3). Although plaintiff was not notified until July 13, 2010 that the file had been misplaced, defendants allege that it is possible that plaintiff's personnel file "was misplaced during the Human Resources/Workforce Development reorganization in 2008," long before this case was initiated by plaintiff. (Id. at 3).

Although defendant speculates that the personnel file may have been "misplaced" before suit was filed, defendants have failed to explain why plaintiff was not notified of the absence of the file until July 13, 2010. Nor have the defendants explained what happened to all of the

11

records relating to plaintiff's employment that surely must have been generated after the file was misplaced in 2008. Included among documents in this category would be any documents generated in 2009, which is when plaintiff's request for a promotion was under consideration. At the very least, it is clear that defendants were under an obligation to maintain plaintiff's personnel file, as well as other relevant documents, once they became aware of the potential of litigation.

### 2. Prong 2: State of Mind

The second prong of the spoliation analysis requires that plaintiff show "that the records were destroyed 'with a culpable state of mind.'" Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107. "[A]s the Second Circuit recently observed, '[t]he law in this circuit is not clear on what state of mind a spoliator must have when destroying [evidence].'" Sterbenz v. Attina, 205 F. Supp. 2d at 74 n.13 (citing Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-08). Some courts in this circuit have required a showing of bad faith; some have required proof of intentional destruction; and others have drawn an inference based on gross negligence. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-08 (citing Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999), cert. denied, 528 U.S. 1119 (2000)). Thus, the Second Circuit has concluded that "a case by case approach [i]s appropriate." Byrnie v.

12

Town of Cromwell, Bd. of Educ., 243 F.3d at 108. Plaintiff, however, has the burden of showing that the evidence was destroyed, at a minimum, either knowingly or negligently. See id. at 109.

In Zubulake V, the court noted that the requirement that counsel "take affirmative steps to monitor compliance" with a litigation hold is not a particularly burdensome one. 229 F.R.D. at 434 (emphasis added). In fact, "[c]ounsel does not have to review these documents, only see that they are retained." Id. Therefore, "the central question . . . is whether [defendant] and its counsel took all necessary steps to guarantee that relevant data was both preserved and produced. If the answer is 'no,' then the next question is whether [defendant] acted willfully . . . negligently or even recklessly." Id. at 431.

Neither negligence or gross negligence has been clearly defined in the context of discovery misconduct, such as spoliation. See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 463. "[T]hese terms simply describe a continuum. Conduct is either acceptable or unacceptable. Once it is unacceptable the only question is how bad is the conduct. . . . That said, it is well established that negligence involves unreasonable conduct in that it creates a risk of harm to others." Id. at 463-64. "'Gross negligence has been described as a failure to exercise even that care which a careless person would use.'" Id. (citation omitted). Courts in this circuit have found that the "failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent, and,

13

depending on the circumstances, may be grossly negligent." Id. at 464-65. However, "the failure to issue a written litigation hold constitutes gross negligence because that failure is likely to result in the destruction of relevant information." Id. (emphasis in original); see also Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7 (finding that "the utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent"); Zubulake IV, 220 F.R.D. at 217.

In Pension Committee, the court held that a party's "fail[ure] to execute a comprehensive search for documents and/or fail[ure] to sufficiently supervise or monitor [] document collection," was "best characterized as either grossly negligent or negligent." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 477. While the failure to collect records from those who are not key players may constitute negligence, the failure to collect and preserve records from key players "constitutes gross negligence." Id. at 465, 477. Even in less extreme cases, where the defendant "failed to institute a full preservation program" and failed to ensure that all necessary employees, including support staff, knew about the preservation program, sanctions have been awarded. Treppel v. Biovail Corp., 249 F.R.D. at 118-19. The "utter failure to establish any form of litigation hold at the outset of litigation [or any time since then] is grossly negligent." Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7.

14

Plaintiff argues the "loss of his entire personnel file . . . represents gross negligence" on the part of the defendants. (Pl's 7/5/11 Letter at 3). In the absence of any definitive statement from someone at the Transit Authority with knowledge or with responsibility to maintain these records explaining how plaintiff's personnel file could have been misplaced or with the responsibility to maintain these records, what efforts were made to search for this misplaced file, and why it is believed the file may have been displaced during the 2008 reorganization, the Court concludes that at the very least, defendants were negligent. The Court therefore finds that defendants have acted with the requisite degree of culpability to satisfy the second prong of the spoliation test. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107.

### 3. Prong 3: Relevance and Prejudice

Once evidence is alleged to have been lost or destroyed due to a party's negligence or gross negligence, the Court considers whether "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Id. at 107-09; Zubulake V, 229 F.R.D. at 431. The party seeking sanctions must make a showing that the destroyed evidence would have been favorable to its case. See De Espana v. Am. Bureau of Shipping, No. 03 CV 3573, 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007) (noting that "where the culpable party was negligent, there must be extrinsic evidence to

15

demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party"); see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 467-68; Zubulake IV, 220 F.R.D. at 221. However, courts have held that "[t]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not to be too onerous, lest the spoliator be permitted to profit from its destruction." Treppel v. Biovail Corp., 249 F.R.D. at 123 (quoting Chan v. Triple 8 Palace, Inc., 2005 WL 1925579, at *7); see also Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 109; Kronisch v. United States, 150 F.3d at 128; In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 199-200 (S.D.N.Y 2007).

In considering the burden of establishing relevance and prejudice when documents have been destroyed, at least one court has found that "[t]he burden of proof question differs depending on the severity of the sanction. For less severe sanctions – such as fines and cost-shifting – the inquiry focuses more on the conduct of the spoliating party than on whether documents were lost, and if so, whether those documents were relevant and resulted in prejudice to the innocent party." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 467. However, "for more severe sanctions – such as dismissal, preclusion, or the imposition of an adverse inference – the court must consider, in addition to the conduct of the spoliating party, whether any missing evidence was relevant and whether the

16

innocent party has suffered prejudice as a result of the loss of evidence." Id.

"[T]he burden of proving that evidence would have been relevant to a party's claims or defense is proportional to the mens rea of the party who destroyed the evidence," and "where the party destroyed the evidence due to ordinary negligence [as opposed to bad faith], 'the burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'" Gutman v. Klein, 2008 WL 4682208, at *7. To satisfy this burden, the innocent party may provide sufficient evidence that would tend to show that the lost documents "'would have been favorable to [its] case.'" Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 468 (quoting Toussie v. County of Suffolk, 2007 WL 4565160, at *8).

Plaintiff notes, and defendants agree (Defs.' 7/8/11 Letter at 2), that "there is some evidence, provided to the defendants in discovery, showing that Mr. Williams had been placed in a 'delegation of authority,' . . . on and off since 2002." (Id. at 1-2). Plaintiff's counsel argues that "had the personnel file not been 'misplaced,' a . . . document indicating that plaintiff was serving in an acting capacity would most likely be in that file." (Id. at 2).

Defendants contend that the missing personnel file did not contain any relevant information that would have been helpful to plaintiff's case. (Defs.' 7/8/11 Letter at 2).

17

Defendants suggest that documentation of plaintiff's acting position contained in the personnel

file would only be relevant to plaintiff's discrimination claim if Ms. Librera had reviewed it.

Defendants argue that sanctions are unwarranted because plaintiff failed to ask Librera, during

her deposition, whether she had reviewed his personnel file. (Id.) Moreover, defendants argue

that some "documents have been produced which show delegation of authority to plaintiff at

certain times," and that

> Kevin Bress as well as other witnesses would have first hand
> knowledge of delegations or acting assignments to plaintiff.
> Indeed, if plaintiff had ever been placed in an acting position,
> Kevin Bress would have been responsible for such a decision. In
> any case, delegation documents, if any exist, are of marginal
> relevance and the information is available from many sources,
> most obviously from Kevin Bress.

(Defs.' 7/8/11 Letter at 2)[4]

This Court finds that documentation of Mr. Williams' service in acting positions,

_____

[4]Defendants make another argument that the Court finds confusing and difficult to follow,
but it appears that they are asserting that "delegation authority" is different than being the actual
"acting" director and that plaintiff has confused the two terms in asserting that certain documents
might have been in the file. Defendants state:

> Although plaintiff was provided with "delegation" documents, and
> although plaintiff equates "delegation" with "acting", plaintiff
> speculates that an "acting" document may have been included in
> the personnel file. Apparently because Librera did not see any
> "delegation" document and speculating that a "delegation"
> document might have been included in the personnel file, plaintiff
> seeks spoilation sanctions.

(Defs.' 7/8/11 Letter at 2). Regardless of what defendants intend to convey here, which remains
unclear, the Court finds that this argument does not affect its decision with respect to spoliation
sanctions.

including as acting Director of MOW Training are relevant to his claim. Proof that Mr.

Williams' was delegated authority, even temporarily, demonstrates that he was thought capable

and responsible by his supervisors, thus making it more likely that he was denied the Director

position in 2009 because of his race. The fact that plaintiff can prove that he served as acting

Director of MOW Training without an adverse inference does not mean that documentation in

his personnel file supporting that point would not be relevant. Such documentation would be

favorable to plaintiff's case.

Based on the above, the Court finds that plaintiff has satisfied his burden under the third

prong of the test to demonstrate both the relevance of the personnel file and the prejudice

suffered by him as a result of its loss. Pension Comm. of the Univ. of Montreal Pension Plan v.

Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 467.


## C. Spoliation Analysis – Norman Documents

With respect to the documents regarding plaintiff's interview scores, defendants assert

that, although defendants have not been provided copies of the deposition transcripts, they recall

that Norman had testified that he did not rate the applicants numerically. (Defs.' 7/8/11 Letter at

2 n.1, 3). Instead, "Norman provided detailed testimony about his evaluation of the comparative

qualifications of plaintiff and Hoban for the Director position." (Id. at 3). Moreover, according

19

to defendants, it was actually another member of the interviewing panel, Julio Vidal, who testified at his deposition that he used a numerical rating scale. (Id.) Defendants assert that plaintiff has already been provided with the documents created by Vidal. (Id.) Thus, defendants assert that plaintiff's claim that defendants have failed to produce these documents is incorrect and plaintiff's request for an inference that he scored higher than Hoban on Norman's numbered system as a result is "without any palpable merit." (Id.)

At this time, in the absence of any evidence that Mr. Norman actually created documents which rated the applicants with a numerical ranking, the Court finds plaintiff's motion for sanctions to be premature. If plaintiff wishes to present those portions of Norman's transcript that deal with this question, the Court will consider plaintiff's request at that time.

### D. Sanctions

Having found that plaintiff meets all three prongs of the spoliation test with respect to the loss of the personnel file, the Court must now determine what, if any, sanctions to impose, and decide if additional sanctions are warranted for defendants' other noncompliance with this Court's Orders.

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436

20

(internal citations omitted). "[A]t the end of the day the judgment call of whether to award sanctions is inherently subjective. A court has a 'gut reaction' based on years of experience as to whether a litigant has complied with its discovery obligations and how hard it worked to comply." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 471. The Court must determine whether the defendants' "[c]onduct is either acceptable or unacceptable," and therefore warrants sanction. Id. at 463-64. "The court must determine the appropriate sanction based on the relative fault of the party against whom sanctions are sought and the prejudice suffered by the party seeking sanctions." Klezmer v. Buynak, 227 F.R.D. 43, 51 (E.D.N.Y. 2005). As already noted, the Court finds that the defendants have spoliated evidence. However, plaintiff's proposed remedy, an adverse inference instruction, is too severe. Instead, plaintiff will be permitted to argue to the jury that it may draw an adverse inference from the fact that the personnel file is missing.

As plaintiff notes, while the appropriate sanction to be imposed lies within the Court's discretion, sanctions "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" West v. Goodyear Tire & Rubber Co., 167 F.3d at 779 (citing inter alia Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988)).

21

(See Pls.' Mem. at 1-2). In addition to outright dismissal, many other sanctions, such as an adverse jury inference and additional discovery, are available to remedy acts of spoliation. See Dahoda v. John Deere Co., 216 Fed. Appx. 124, 124 (2d Cir. 2007) (holding that a trial court should not order dismissal for spoliation where less drastic alternatives exist); see also Fed. R. Civ. P. 37(b)(2) (providing examples of available sanctions). "The choices include - from least harsh to most harsh - further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default or dismissal (terminating sanctions)." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 685 F. Supp. 2d at 469.

Here, plaintiff requests the Court to instruct the jury that they should presume that his missing file contained documentation demonstrating that he was filling the position of acting Director of MOW Training. (Pl.'s 7/5/11 Letter at 2). "[S]poliation of evidence germane 'to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" Zubulake IV, 220 F.R.D. at 216 (citing Kronisch v. United States, 150 F.3d at 126). An "adverse inference instruction is an extreme sanction and should not be given lightly." Id. at 220, 216. "An adverse inference instruction directs the jury's attention to the inference the court instructs on and can give the impression that the court thinks the jury ought to draw the inference. The suggestive force of the adverse inference instruction is precisely the reason for the court's careful analysis before ordering it." Klezmer v. Buynak, 227

22

F.R.D. at 52.

In Klezmer, the court denied plaintiffs' motion for spoliation sanctions in the form of an adverse inference instruction on the basis that it was too severe a sanction. The court instead permitted plaintiffs to "argue to the jury that it may draw an inference from the fact that certain documents are missing." Id. at 45. In reaching its conclusion, the Klezmer court considered "the relative fault of the defendant" and the "sanction rationales." Id. at 52. The court found that defendant had acted negligently in spoliating a pre-accident report on the condition of an ATV involved in an accident, but denied plaintiffs' request for an adverse inference instruction allowing the jury to conclude that the ATV's brakes were defective because plaintiffs had failed to request an inspection of the ATV or a deposition of defendant's expert. Id.

In this case, the Court will allow plaintiff to argue to the jury that it should draw an adverse inference from the fact of the missing personnel file; however, the Court finds that an adverse inference instruction is not warranted on the facts of this case. While defendants were at fault in failing to preserve plaintiff's personnel file, the prejudice suffered by plaintiff was relatively minor. Plaintiff and defendants agree that there is other evidence in this case showing that plaintiff served as acting Director of MOW Training beginning in 2002. Therefore, plaintiff suffers little prejudice on the issue of his acting assignment resulting from defendants' spoliation. Plaintiff has not claimed that the personnel file is relevant to his case beyond proving that he held

23

the acting assignment. Therefore, plaintiff's request for an adverse inference instruction is denied.

## E. Deposition of Tom Webb

In response to plaintiff's request for Webb's deposition, defendants assert "that the necessity or purpose of Webb's testimony is unclear, since Librera is the decision maker in this case." (Defs.' 7/8/11 Letter at 3). Defendants also claim that when former counsel had advised plaintiff that defendants would make Webb available for deposition, he was still living in the area. (Id.) Once "all depositions were delayed, by agreement, to allow the parties to complete document discovery," Webb relocated to California. (Id.) Defendants further assert that they nevertheless offered to make Webb available for deposition in New York in mid-July, but the date conflicted with plaintiff's counsel's vacation schedule. (Id. at 4). Plaintiff's counsel purportedly told defendants' counsel at that time that "she was unsure whether it was necessary to depose Webb, but that if plaintiff wished to conduct the deposition, the parties discussed the possibility of a joint request to extend the discovery deadline." (Id.) Therefore, "[i]n the context of many discussions between the parties, [defendants] do not understand the purpose of this request" for defendants to pay to transport Webb to New York for deposition. (Id.) Defendants also note that Webb is a non-party to this action and that neither defendants nor this Court have

24

the authority to compel Webb to appear for a deposition in New York. (Id. at 3-4).

At this time, because it is unclear what the subject of Webb's testimony would be, the Court is not in a position to find that the deposition is so critical to plaintiff's case that the Court should order the shifting of costs. As defendants note, the witness is a nonparty located outside the subpoena power of the Court. Plaintiff is always free to request an order from the district court in the district where Mr. Webb resides. At the same time, since it appears that defendants have offered to arrange for Mr. Webb's deposition while he is in New York, the Court urges the parties to confer on a jointly acceptable date. If Mr. Webb has no plans to be in New York in the near future and plaintiff deems his deposition to be necessary the parties are urged to consider conducting a telephonic deposition pursuant to Rule 30 of the Federal Rules of Civil Procedure.

## F. Defendants' Discovery Requests

In addition to opposing plaintiff's requests in their entirety, defendants make two separate and additional requests. Defendants claim that they served plaintiff with a request for a release of his medical records on June 3, 2010. (Defs.' 7/8/11 Letter at 4). In a response dated June 13, 2010, plaintiff agreed to provide an authorization for the period from January 25, 2010 to the present. (Id.) Plaintiff, however, did not produce the releases and therefore, on June 14, 2011, defendants renewed their request and "provided plaintiff with a HIPAA release form" to execute.

25

(<u>Id.</u>) In response to defendants' second request for the authorization, plaintiff provided certain "documents and a HIPAA release to defendants." (<u>Id.</u>) According to defendants, the release form was dated June 13, 2010 and had actually expired in August of 2010. (<u>Id.</u>) Defendants therefore contacted plaintiff's counsel on July 1, 2011 to advise her about the incorrect dates and to request that a new release be executed. (<u>Id.</u>) However, defendants assert that none has been provided. (<u>Id.</u>) Defendants therefore request "that plaintiff be directed to promptly provide a properly executed a [sic] HIPAA release which permits access to all of plaintiff's medical and psychiatric records from 2005 to the present." (<u>Id.</u> at 5).

Defendants have also requested the production of an envelope, which contained interview documents that were allegedly left on plaintiff's desk anonymously in order to attempt to identify the author of the writing on the envelope. (<u>Id.</u>) Defendants assert that members of the interview panel would have had access to the documents that were allegedly in the envelope, but that the "members of the interview panel who have been deposed have denied providing the documents to plaintiff." (<u>Id.</u>) Despite defendants' request, plaintiff has failed to produce the envelope, which defendants claim "would likely have a direct bearing on the credibility of a witness." (<u>Id.</u>) Defendants therefore request that this Court direct plaintiff to produce the envelope and its contents, or impose sanctions if plaintiff has purposefully made the envelope unavailable. (<u>Id.</u>)

To date, plaintiff has not filed any response to defendants' letter addressing these

26

requests.

In the absence of any reason for objecting to defendant's request for medical authorizations, plaintiff is ordered to provide current authorizations on or before November 1, 2011.

With respect to defendant's request to inspect the envelope, plaintiff is ordered to make the envelope available for inspection or provide a copy on or before November 1, 2011.

## G. Defendant's Request for Extension of Time

Defendants also request an extension of time to respond to pending document requests because witnesses have been on vacation and two witnesses have retired and are not readily available. (Defs.' 8/10/11 Letter at 1). Plaintiff objects to defendants' request only with respect to the errata sheets for the depositions of Mr. Andrews and Mr. Vidal on the basis that defendants' request was not filed by August 4, 2011, or within 30 days of defendants' receipt of a copy of the transcripts. (Pl.'s 8/10/11 Letter at 1). Defendants' request for an extension to respond to pending document requests is granted.

### CONCLUSION

The parties are reminded that the next conference in this case is scheduled for **November**

27

**1, 2011 at 3:00 p.m.**

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing ("ECF") system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
October 19, 2011

/s/

Cheryl L. Pollak
United States Magistrate Judge